FOR THE RESPONDENT FOR THE INDIANA COMMISSION
 ON JUDICIAL QUALIFICATIONS

Daniel P. Byron Meg Babcock, Counsel to the
Commission
1110 Chamber Commerce Building 115 West Washington Street, Suite
1080
Indianapolis, Indiana Indianapolis, Indiana

 IN THE
 SUPREME COURT OF INDIANA

IN THE MATTER OF )
JAMES FUNKE, JR., ) Case No. 40S00-0102-JD-136
JUDGE OF THE JENNINGS )
SUPERIOR COURT )

 JUDICIAL DISCIPLINARY ACTION

 September 27, 2001

Per curiam

 This matter comes before the Court as a result of a judicial
disciplinary action filed by the Indiana Commission on Judicial
Qualifications (“Commission”) against the respondent, James Funke, Jr.,
Judge of the Jennings Superior Court. Pursuant to Indiana Admission and
Discipline Rule 25(VIII)(H), the respondent and Commission jointly
submitted a “Statement of Circumstances and Conditional Agreement for
Discipline,” which the Court approved by written order dated August 13,
2001.
 Article 7 Section 4 of the Indiana Constitution and Indiana Admission
and Discipline Rule 25 give the Court original jurisdiction over this
matter.

 Background
 The parties stipulated to the following background information and
facts. Jennings Northwest Regional Utilities (“JNRU”) is a regional water
and sewage district established by the Department of Environmental
Management for the purpose of expanding and installing sewer lines in
Jennings County. JNRU’s expansion of sewer lines in a rural area of the
county designated “Phase 1” generated significant local controversy
concerning, in part, JNRU’s plan to force sewage connections and impose
what a number of citizens believed were onerous rates and charges. In July
1999, the Jennings County Board of Commissioners withdrew support for JNRU
and replaced five JNRU board members. One of the new board members was the
respondent’s first cousin. The original JNRU board then filed a lawsuit
against the Jennings County Board of Commissioners and other defendants,
including respondent’s first cousin, alleging the new JNRU board members
were illegally installed. The respondent’s parents, aunt and first cousin
live in Phase 1.
 In October 1999, the respondent’s father filed a petition for
emergency protective order to enjoin JNRU from running its equipment
through his property. Pursuant to a local rule, all such emergency
petitions were filed in the respondent’s court. As was the practice then
with most protective order filings in the Jennings Superior Court, an
employee of the clerk’s office affixed a stamp of the respondent’s
signature to a protective order at the time the petition was filed and
before review by the respondent. JNRU therefore received a protective
order in favor of the respondent’s father that appeared to have been issued
by the respondent. Later that day, upon learning of the order, the
respondent transferred his father’s protective order petition to the judge
of the Circuit Court, who granted it and issued a separate order.
 In November and December 1999 and January 2000, after the Phase 1
construction began, several citizens who were opposed to installation of
sewage lines and expressed concern about imminent damage to their property,
filed for temporary protective orders against JNRU. The respondent granted
the petitioners temporary protective orders and in most cases then
disqualified himself. However, in several cases filed pro se in which he
had disqualified himself, and in one case in which he had granted an
automatic change of judge, the respondent thereafter sua sponte issued
“Orders of Clarification,” which extended the effectiveness of the
emergency protective orders against JNRU. In another case, the respondent
ordered JNRU to remove a trencher from the petitioner’s property after
having disqualified himself. Also in January 2000, the respondent issued
protective orders in new cases filed by two petitioners whose 1999
protective orders had expired. The 1999 protective order cases had already
been transferred to a special judge who had declined to extend the 1999
orders.
 The Commission brought a multiple count complaint against the
respondent. We appointed masters to hear and take evidence pursuant to
Indiana Admission and Discipline Rule 25 (VIII)(I), but before the case
went to trial, the parties tendered a proposed settlement agreement. The
parties have stipulated and we agree that the respondent’s conduct violated
the Indiana Code of Judicial Conduct as follows.

 Count I
 The respondent permitted a practice in his court and in the clerk’s
office from 1997 through early 2000 whereby the clerk or her employees,
with the respondent’s knowledge, affixed the respondent’s signature stamp
to protective orders when petitions were filed and before the respondent
reviewed the petitions. This practice led to the appearance that
respondent granted his own father a protective order. In permitting this
practice, the respondent violated Canon 1 of the Code of Judicial Conduct,
which requires judges to uphold the integrity and independence of the
judiciary; Canon 2A, which requires judges to respect and comply with the
law and to act at all times in a manner promoting the public confidence in
the integrity and impartiality of the judiciary; Canons 3 and 3A, which
require a judge to diligently perform judicial duties; and Canon 3C(1),
which requires judges to diligently discharge administrative
responsibilities and to maintain professional competence in judicial
administration. The respondent also committed conduct prejudicial to the
administration of justice.
 Counts II and VI
 The respondent granted several citizens emergency protective orders
against JNRU despite the property interests of his parents, aunt and first
cousin in the Phase 1 district, his father’s protective order against JNRU,
and his first cousin’s appointment to the JNRU board, the legality of which
JNRU had challenged. The respondent thereby violated Canon 1 of the Code
of Judicial Conduct, which requires judges to uphold the integrity and
independence of the judiciary; Canon 2A, which requires judges to respect
and comply with the law and to act at all times in a manner promoting the
public confidence in the integrity and impartiality of the judiciary; Canon
2B, which forbids judges from allowing family, social, political or other
relationships to influence the judge’s judicial conduct or judgment, and
which prohibits judges from lending the prestige of the office to advance
the private interests of others; Canon 3B(5), which requires judges to
perform their duties without bias or prejudice; Canon 3E, which requires
judges to disqualify themselves when their impartiality might reasonably be
questioned; and Canon 3E(1)(a), which requires judges to disqualify
themselves when they have a personal bias or prejudice concerning a party
or a party’s lawyer. The respondent also committed conduct prejudicial to
the administration of justice.

 Counts III and IV
 After granting an automatic change of judge in one case and
disqualifying himself in several other cases, the respondent then sua
sponte issued “Orders of Clarification” in which he extended the
effectiveness of the emergency protective orders against JNRU. In another
case, after having disqualified himself, the respondent issued an order
requiring JNRU to remove a trencher from the petitioner’s property. The
respondent’s conduct violated Canon 1 of the Code of Judicial Conduct,
which requires judges to uphold the integrity and independence of the
judiciary; Canon 2A, which requires judges to respect and comply with the
law and to act at all times in a manner promoting the public confidence in
the integrity and impartiality of the judiciary; Canon 2B, which forbids
judges from allowing family, social, political or other relationships to
influence the judge’s judicial conduct or judgment, and which prohibits
judges from lending the prestige of the office to advance the private
interests of others; Canon 3B(2), which requires judges to be faithful to
the law and to maintain professional competence in it; Canon 3B(5), which
requires judges to perform their duties without bias or prejudice; Canon
3C(1), which requires judges to diligently discharge the judge’s
administrative duties without bias or prejudice and to maintain
professional competence in judicial administration; and Canons 3E and
3E(1)(a), which again required the judge’s disqualification in light of the
property interests of his parents, aunt and first cousin in Phase I, his
father’s protective order against JNRU, and his first cousin’s appointment
to the JNRU board, the legality of which JNRU had challenged. The
respondent also committed conduct prejudicial to the administration of
justice.

 Count V

 Further, in sua sponte issuing the “Orders of Clarification”
extending the effectiveness of the protective orders where no pleadings or
petitions requesting that relief were filed, the respondent violated Canon
1 of the Code of Judicial Conduct, which requires judges to uphold the
integrity and independence of the judiciary; Canon 2A, which requires
judges to respect and comply with the law and to act at all times in a
manner promoting the public confidence in the integrity and impartiality of
the judiciary; Canon 2B, which forbids judges from allowing family, social,
political or other relationships to influence the judge’s judicial conduct
or judgment, and which prohibits judges from lending the prestige of the
office to advance the private interests of others; Canon 3B(2), which
requires judges to be faithful to the law and to maintain professional
competence in it; Canon 3B(5), which requires judges to perform their
judicial duties without bias or prejudice; Canon 3B(9), which requires
judges to dispose of all matters fairly; Canon 3C(1), which requires judges
to diligently discharge their administrative responsibilities without bias
or prejudice and to maintain professional competence in judicial
administration; and Canons 3E and 3E(1)(a), which required the judge’s
disqualification in light of the property interests of his parents, aunt
and first cousin in the Phase I district, his father’s protective order
against JNRU, and his first cousin’s appointment to the JNRU board, the
legality of which JNRU had challenged. The respondent also committed
conduct prejudicial to the administration of justice.

 Count VII

 When in January 2000 the respondent granted new protective orders for
two petitioners whose 1999 protective orders had expired, he should have
known that a special judge had assumed jurisdiction of the 1999 protective
order cases and had indicated he would not extend the effectiveness of the
1999 orders. In granting the new protective orders, the respondent
interfered with the exercise of judicial authority by another judge and
assisted the petitioners in an attempt to seek out a more favorable forum.
The respondent thereby violated Canon 1 of the Code of Judicial Conduct,
which requires judges to uphold the integrity and independence of the
judiciary; Canon 2A, which requires judges to respect and comply with the
law and to act at all times in a manner promoting the public confidence in
the integrity and impartiality of the judiciary; Canon 2B, which forbids
judges from allowing family, social, political or other relationships to
influence the judge’s judicial conduct or judgment, and which prohibits
judges from lending the prestige of the office to advance the private
interests of others; Canon 3B(2), which requires judges to be faithful to
the law and to maintain professional competence in it; Canon 3B(5), which
requires judges to perform their duties without bias or prejudice; and
Canon 3C(1), which requires judges to diligently discharge the judge’s
administrative duties without bias or prejudice and to maintain
professional competence in judicial administration. The respondent also
committed conduct prejudicial to the administration of justice.

 Conclusion

 The parties have agreed, as does the Court, that an appropriate
sanction for respondent’s misconduct is the suspension from judicial office
without pay for a period of fifteen days, to be served from October 20,
2001 through November 3, 2001.
 Costs of this proceeding are assessed against the respondent.
 All Justices concur.